**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**(1) SEAN MURTAGH, individually and on behalf of all others similarly situated**

**Plaintiff,**

**v.**

**(1) BED BATH & BEYOND, INC.,**

**(2) LEVTEX HOLDINGS, LLC,**

**Defendants.**

**Case No. ________________**

**JURY TRIAL DEMANDED**

**COMPLAINT**

COMES NOW Plaintiff Sean Murtagh ("Plaintiff") and all individuals similarly situated ("Putative Class Members"), by and through their attorneys of record, and for their Complaint against the above-named Defendants, state as follows:

**INTRODUCTION**

1. Baby Crib Bumpers ("Bumpers") are popular products designed to wrap around the bottom perimeter of a baby's crib, purportedly to prevent babies from becoming trapped between the slats of the crib and for cushioning on the sides of the crib. Bumpers are often marketed and sold with other baby bedding products, such as sheets and mattresses, reinforcing the idea that they are to be used while a baby is sleeping. Descriptions of many Bumpers include phrases such as, "ULTIMATE PROTECTION FOR YOUR BABY" or "keeps tiny arms and toes safely inside the crib." Tragically, however, Bumpers are not safe for infant sleep as the manufacturers and retailers have represented to the public. In fact, between 1985 and 2012, Bumpers were possibly involved

in at least 77 infant deaths and at least 25 non-fatal injuries. The causes of these deaths include suffocation on the Bumper itself and strangulation by the ties holding Bumpers to the crib. Both the American Academy of Pediatrics ("AAP") and the US Consumer Products Safety Commission ("CPSC") recommend that parents avoid using Bumpers on their babies' cribs.

2. As early as 2007, the Journal of Pediatrics noted that Bumpers are extremely unsafe and can lead to Sudden Infant Death Syndrome ("SIDS"). Despite this alarming information, Bumpers remain extremely popular and are sold at nearly every retailer, both at brick and mortar stores and online, that sells baby products. While some retailers have recently added warnings and/or disclaimers to their Bumpers, the AAP has stated that no Bumpers are completely safe, regardless of their design or the materials that comprise them.

3. Defendants knew about these risks for as long as they sold Bumpers. Among other things, (1) the AAP and major consumer groups repeatedly issued warnings about the serious dangers of Bumpers; (2) At least one major retailer, Wal-Mart, has already been sued for at least one infant death caused by Bumpers, which resulted in Wal-Mart ceasing to sell that brand/model of Bumpers; (3) at least 77, and likely more, deaths have occurred in babies whose cribs had Bumpers; and (4) dozens, if not hundreds, of non-fatal injuries have occurred to babies whose cribs had Bumpers. Ignoring documented safety concerns, Defendants marketed and sold Bumpers in the United States as safe crib accessories that are suitable for all night and prolonged sleep.

4. Then, on November 23, 2019, the Washington Post published an article that fully articulates the dangers posed by Bumpers, titled "Crib bumpers tied to dozens of infant deaths. Regulators are too paralyzed to act." Yet, Defendants continue to manufacture and sell Bumpers, preying on unsuspecting parents.

## PARTIES

5. Plaintiff Sean Murtagh ("Mr. Murtagh" or "Plaintiff") is a citizen of Denver County in the State of Colorado. Mr. Murtagh purchased a set of Bumpers for his six-month-old child from Bed Bath & Beyond in Denver, CO in 2019. When he attempted to return them, the return was rejected. The set of Bumpers Mr. Murtagh purchased were manufactured by Levtex Holdings, LLC. Mr. Murtagh was induced to purchase the Levtex Holdings, LLC crib bumpers because both Bed Bath & Beyond and Levtex Holdings, LLC marketed them as a safe crib accessory that serve to protect babies while they sleep.

6. Defendant Bed Bath & Beyond, Inc. is a New York corporation headquartered in Union Township, New Jersey. Bed Bath & Beyond, Inc. operates approximately 1500 retail stores in the United States. Plaintiff Murtagh purchased his set of Bumpers at a Bed Bath & Beyond store.

7. Defendant Levtex Holdings, LLC is a business headquartered in Santa Monica, California. Defendant Levtex Holdings, LLC is a Delaware corporation that manufacturers several types of crib baby bumpers, including the model purchased by Plaintiff Murtagh.

8. The Putative Class members, as defined below, are citizens of various states that have purchased baby crib bumpers sold and/or manufactured by Defendants from 2008 to present.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because, upon information and belief, there are 100 or more class members, at least one class member is a citizen of a state that is diverse from each Defendant's citizenship, and the amount in controversy exceeds $5 million exclusive of interest and costs.

10. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, et seq., arise under federal law, and this Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendant Bed Bath & Beyond, Inc. because it purposefully availed itself of the privilege of conducting business in the State of Colorado; because it transacts business, and supplies good and services in the State of Colorado; because it committed tortious acts that caused injury to persons within the State of Colorado; and because there is a substantial relationship between Plaintiff's claims and Colorado transactions involving Bed Bath & Beyond.

12. The Court has personal jurisdiction over Defendant Levtex Holdings LLC because it has purposefully availed itself of the privilege of conducting business in the State of Colorado, including that it is the manufacturer of the Bumpers Plaintiff bought; because it transacts business, and supplies good and services in the State of Colorado; because it committed tortious acts that caused injury to persons within the State of Colorado; and because there is a substantial relationship between Plaintiff's claims and Colorado transactions involving Levtex Holdings LLC.

13. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District.

## **FACTUAL ALLEGATIONS**

14. The US Consumer Product Safety Commission ("CPSC") maintains files on cases voluntarily reported to them of deaths and injury related to commercial products. A study published in the Journal of Pediatrics in 2007 reviewed infant deaths between 1985 and 2005

related to crib bumpers by searching the CPSC's database for crib-related injuries that potentially might have been attributed to Bumpers.[1]

15. The study found that twenty-seven (27) accidental deaths reported by medical examiners or coroners were attributed to bumper pads. Further, the study found twenty-five (25) nonfatal injuries that were attributed to bumper pads. The authors of the study concluded that ***all retail bumpers had hazardous properties and that bumpers should not be used.***[2]

16. The authors of the study noted that since the deaths they studied were voluntarily reported to the CPSA, "[t]hese cases represent an unknown fraction of total occurrences."[3]

17. After publishing their 2007 study, the authors called on the CPSC to restrict use of Bumpers, but the CPSC took no action.

18. The American Academy of Pediatrics ("AAP") periodically updates its guidelines regarding safe sleeping environments for infants so as to prevent Sudden Infant Death Syndrome ("SIDS"). In 2012, the medical journal American Family Physician ("AFP") published an article that discussed recent updates to AAP's guidelines regarding safe sleeping environments for infants.[4] The AAP recommended: placing infants in the supine position (on the infant's back), on a firm mattress simply covered by a fitted sheet, and removing all soft objects, loose bedding, and similar items from the infant's crib. The AAP also recommended against placing bumper pads or similar products in an infant's crib, as "they may increase the risk of suffocation, strangulation,

---

[1] The study, Deaths and Injuries Attributed to Infant Crib Bumper Pads, can be found at https://www.jpeds.com/article/S0022-3476%252807%252900363-0/fulltext.
[2] *Id.*
[3] *Id.*
[4] The article, AAP Expands Recommendations on SIDS and Other Sleep-Related Deaths, can be found at https://www.aafp.org/afp/2012/0501/p918.html.

and entrapment."[5]

19. In February of 2016, the authors of the 2007 study regarding infant deaths caused by Bumpers published a new study in the Journal of Pediatrics, titled Crib Bumpers Continue to Cause Infant Deaths: A Need for a New Preventative Approach.[6] The authors again studied the CPSC database of infant deaths classified by mechanism, with an expanded temporal scope of January 1985 to October 2012. They found that there were three times more deaths attributed to Bumpers in the previous seven years than had occurred in the three previous time periods. The authors concluded Bumpers caused 48 suffocations, 67% by a Bumper alone, and 33% by wedgings between a Bumper and another object.[7] The authors then compared the number of deaths reported to the CPSC with those from the National Center for the Review and Prevention of Child Deaths ("NCRPCD") from 2008-2011. The result was an increase to 77 total infant deaths attributed to Bumpers. The authors concluded that the supposed benefits proffered by manufacturers and retailers of Bumpers "were not supported by the data."[8] Further, the study noted that since the deaths were voluntarily reported, it was likely that more deaths had occurred due to Bumpers.

20. In November 2016 the AAP updated their guidelines for a safe sleeping environment for infants again. Notably, the AAP stated that "[b]ecause bumper pads have been implicated as a factor contributing to deaths from suffocation, entrapment, and strangulation, and because they are not necessary to prevent head entrapment with new safety standards for crib slats,

---

[5] *Id.*
[6] https://www.jpeds.com/article/S0022-3476(15)01284-6/abstract
[7] *Id.*
[8] *Id.*

they are not recommended for infants."[9]

21. The data linking Bumpers to infant deaths is so clear that various cities and states have begun regulating them due to a lack of federal action. The city of Chicago, Illinois banned Bumpers in 2011 over fervent objections from retailers and manufacturers. The state of Maryland banned Bumpers in June 2013, while the state of Ohio banned Bumpers in 2017.

22. In May 2017 the CPSC issued a statement regarding the dangers of crib bumpers. The statement was attached to a report the CPSC authored that itself was a follow-up to a September 2016 CPSC staff report that found 107 fatal and 282 nonfatal incidents from January 1990 to March 2016 associated with Bumpers.[10]

23. The 2017 report identified six additional hazards associated with padded bumpers: they limit space on the mattress, the cover key failure points on the crib, they are difficult to install, they are used with children older than the recommended age, they are used outside cribs, and their use sends mixed messages about padded objects in cribs.[11]

24. The report marked the first time the CPSC considered blocking the use of Bumpers. However, Dr. Rachel Moon, lead author on the AAP's safe sleep policy statement, noted that it would likely take years for the CPSC to develop meaningful regulations for Bumpers, and therefore the AAP continued to support a full ban on them.[12]

25. Nonetheless, vast numbers of retailers and manufacturers of Bumpers have

---

[9] SIDS and Other Sleep-Related Infant Deaths: Updated 2016 Recommendations for a Safe Infant Sleeping Environment: https://pediatrics.aappublications.org/content/138/5/e20162938?utm_source=highwire&utm_medium=email&utm_campaign=Pediatrics_

[10] https://www.aappublications.org/news/2017/05/19/Bumpers051917

[11] The full report can be found at https://www.cpsc.gov/s3fs-public/CBStatement.pdf?dhFXWQNHUqQ2yV4xuY654JrJ3K0Towc

[12] https://www.aappublications.org/news/2017/05/19/Bumpers051917

continued to market them as safe crib accessories, despite the substantial amount of credible data and research that have explicitly demonstrated the severe dangers caused by Bumpers.

26. These retailers and manufacturers, including Defendants, have made great efforts to deceive potential buyers of Bumpers by downplaying and/or discrediting the studies linking Bumpers and infant deaths. The retailers and manufacturers, including Defendants, have also deceived purchasers of Bumpers by engaging in misleading marketing campaigns and displaying deceptive and/or false labels on Bumpers that portray them as being not only free of risk of harm, but also as products that actively improve the safety of the infant.

27. Retailers and manufacturers, including Defendants, have also engaged, and continue to engage, in marketing campaigns that promote Bumpers as aesthetically pleasing additions to the decor of an infant's bedroom. Bumpers come in myriad colors and designs, and consumers are encouraged to buy multiple sets to match different sets of bedding.

28. Defendants failed to give consumers, including Plaintiff and the Putative Class Members, adequate warnings of the dangers Bumpers pose to the health and safety of their infants if left in the crib during prolonged sleep, including overnight sleep.

29. From at least 2008 to present, Defendant Bed Bath & Beyond, Inc. has manufactured and sold numerous types of Bumpers, including the models purchased/owned by Plaintiff, in stores throughout the United States, including in Colorado.

30. From at least 2008 to present, Defendant Levtex Holdings LLC has manufactured numerous types of Bumpers, including the models purchased/owned by Plaintiff, and sold them to retailers throughout the United States, including in Colorado.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Continuing Act Tolling

31. Defendants have been manufacturing, marketing, and selling Bumpers for many years – since at least 2008. During this timeframe, Defendants have continuously marketed and sold dangerous Bumpers to unsuspecting parents and caregivers of infants. They continuously represented these Bumpers as safe accessories to cribs that help secure infants during all-night or prolonged sleep. By continuously repeating these false representations, and failing to disclose that Bumpers were defectively designed and exposed infants to great risk of injury and death, Defendants engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendants might seek to apply.

32. Defendants' knowledge of the defects is evidenced by, *inter alia*: numerous complaints by consumers of injury and death; by warnings from the AAP and major consumer groups; by a lawsuit against Wal-Mart for an infant's death caused by Bumpers; by Chicago, Maryland, and Ohio's bans on Bumpers; and by the November 23, 2019 Washington Post article that details the risks that Bumpers pose to babies.

33. Thus, Defendants indisputably possessed continuous knowledge of the dangers posed by Bumpers, and, yet, they inexplicably continued to repetitiously market and sell them as safe products for overnight and prolonged sleep. Plaintiff's and other Class members' claims are not time barred.

**Fraudulent Concealing Tolling**

34. Defendants had a duty to disclose to Plaintiff and the Class members the true quality and nature of the Bumpers, that Bumpers have uniform defect, and that Bumpers pose significant safety concerns.

35. This duty arose due to, *inter alia,* their representations that Bumpers are safe to use in cribs.

36. Defendants have known at all relevant times of the risks that its Bumpers pose to infants. Prior to selling Bumpers, Defendants knew or should have known about the AAP's 2005 recommendations concerning safe sleep, which state that babies should sleep flat on their backs in an empty bassinet or crib, with no soft blankets or other objects. As of 2011, Defendants knew or should have known that the AAP expanded on those warnings. Defendants also knew or should have known about the 2007 and 2012 studies linking Bumpers to infant deaths. Defendants also knew or should have known that various cities and states, such as Chicago, Maryland, and Ohio, have banned Bumpers due to safety concerns. In 2016, Defendants knew or should have known when the AAP further expanded on its recommendations. And, finally, in November 2019, Defendants knew or should have known about the risks after the Washington Post article, "Crib bumpers tied to dozens of infant deaths. Regulators are too paralyzed to act" was published.

37. Despite their knowledge of the defective design and danger of Bumpers when used as intended, Defendants failed to disclose and concealed this material information from Plaintiff and other Class members, and instead they continued to market the Bumpers as safe for overnight and prolonged infant sleep.

38. The purpose of Defendants' concealment of the dangers was to prevent Plaintiff and other Class members from seeking redress.

39. Plaintiff and the other Class members justifiably relied on Defendants to disclose the true nature of the products they purchased and/or owned because the defects were not discoverable by Plaintiff and the other Class members through reasonable efforts.

40. Any applicable statute of limitations has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**ESTOPPEL**

41. Defendants were under a continuous duty to disclose to Plaintiff and the other members of the Class the facts that it knew about the dangers Bumpers pose to infants.

42. Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Bumpers from Plaintiff and other members of the Class.

43. Thus, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and on behalf of following "Class":

> All persons who purchased or owned any crib bumper pads sold by Bed Bath & Beyond, Inc. and/or manufactured by Levtex Holdings, LLC from 2008 to present.

45. The Class is so numerous that joinder of all members is impracticable. The Class numbers more than a thousand members.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

47. Plaintiff's claims are typical of the claims of the other members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, and all Class members were subject to Defendants' deceptive statements, including deceptive claims that accompanied each and every set of crib bumpers that was sold concerning its suitability for prolonged or overnight sleep. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

48. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the Class. Plaintiff is represented by counsel skilled and experienced in complex civil litigations, including class actions. Plaintiff's counsel is

accustomed to handling substantial litigation matters.

49. Plaintiff and Plaintiff's counsel have no interests that conflict in any way with those of Class members.

50. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a) Whether Defendants' claims about crib bumpers being safe and suitable for prolonged or overnight sleep are reasonably likely to deceive;

b) Whether Defendants engaged in unfair and/or deceptive advertising in marketing the product as a crib accessory that was suitable for prolonged or overnight sleep;

c) Whether Defendants' misconduct constitutes a breach of the warranties that exists between Defendants and Plaintiff and the other members of the Class;

d) Whether Defendants have been unjustly enriched;

e) Whether Plaintiff and the members of the Class have been injured by Defendants' misconduct;

f) Whether Plaintiff and the members of the Class are entitled to relief, and the amount and nature of such relief.

51. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable

for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, economies of scale and comprehensive supervision by a single court strongly weigh in favor of resolution on a class basis.

**COUNT I**
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq***
**(On Behalf of Plaintiff and the Nationwide Class)**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The sale of crib Bumpers was subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

54. Bumpers are "consumer products" as defined in the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

55. Plaintiff and the other Nationwide Class members are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

56. Defendants are "suppliers" and "warrantors" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

57. Bumpers' implied warranties are covered by the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(7).

58. Defendants breached these warranties, as further described above, by selling the Bumpers as safe crib accessories for all-night or prolonged sleep, and not disclosing their defective condition, and by providing Bumpers not in merchantable condition and not fit for the ordinary purpose for which crib bumpers/crib wraps are used. They are also not fit for the specific purposes for which Defendants sold them and for which Class members purchased and/or owned them.

59. Privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Defendants and those who sell their

products; specifically, they are the intended beneficiaries of Defendants' express and implied warranties. The vendors were not intended to be the ultimate consumers of the Bumpers and have no rights under the warranty agreements provided with the Bumpers; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the Bumpers are dangerous instrumentalities due to the aforementioned defects and nonconformities.

60. Requiring an informal dispute procedure, or affording Defendants a reasonable opportunity to cure their breach of written warranties, is unnecessary and futile. Defendants knew, should have known, or were reckless in not knowing, of their misrepresentations concerning the Bumpers' inability to provide a safe sleeping environment, but nonetheless failed to rectify the situation and/or disclose the truth. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resorts to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed unsatisfied.

61. Plaintiff and the other Class members have been damaged as a result of the wrongful conduct complained of herein. Said conduct continues and the harm or risk of harm is ongoing.

62. The amount in controversy exceeds the statutory minimums set forth at 15 U.S.C. § 2310(d)(3). Each Class member's individual claim is equal to or larger than $25 and the cumulative amount in controversy (excluding interest and costs) exceeds $50,000.

63. As a result of Defendants' violations of the Magnuson-Moss Warranty Act and warranties with consumers, Plaintiffs and the other members of the Class have been damaged in

an amount to be determined at trial.

**COUNT II**
**Violation of Colorado Consumer Protection Act**
**(C.R.S.A. § 6-1-101 et. al.)**
**(On Behalf of Plaintiff and the Colorado Class)**

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. This Count is brought on behalf of Plaintiff and the Colorado Class ("Class" for the purposes of this Count) for violation of the Colorado Consumer Protection Act, C.R.S.A. § 6- 1-101 *et*. *al*. ("CCPA"), which prohibits deceptive acts or practices in the conduct of any business in Colorado.

66. C.R.S.A. § 6-1-113 provides a right to bring a civil action to any consumer of the Defendants' goods, or successor in interest. In federal court, such action may be brought as a class action. *See, e.g*., *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (holding that class action could proceed in federal court despite state rule's class action bar); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civil Action No. 16-2765 (JLL), 2017 U.S. Dist. LEXIS 70299, at *74 (D.N.J. May 8, 2017) (denying motion to dismiss class CCPA claim, and holding that in *Shady Grove*, "the Supreme Court has addressed this issue and has held that matters may proceed as putative class actions, regardless of whether state statutes prohibit such claims, so long as the application of Fed. R. Civ. P. 23 does not 'abridge, enlarge or modify any substantive right.'").

67. Defendants' design, manufacture, marketing, advertising, labeling, and/or sale of the Bumpers constitutes Defendants' course of business.

68. Defendants' design, manufacture, distribution, marketing, advertising, labeling, and sale of the Bumpers constitutes "business" under C.R.S.A. § 6-1-105.

69. Defendants' conduct violates C.R.S.A. § 6-1-105 because Defendants engaged in the deceptive acts and practices described above, which included issuing marketing messages directed at Plaintiff and the Class, conveying, on the boxes containing the product and elsewhere, and through Defendants' "brand" of utmost safety in products for children, the false message that the Bumpers are suitable for safe infant sleep, including overnight and prolonged sleep.

70. Defendants' marketing and sale of the product omitted material facts concerning the danger of death and injury associated with the use of Bumpers. Defendants also misrepresented facts and made misleading statements and omissions concerning the fitness of the product for safe infant sleep, including prolonged and overnight sleep, which were deceptive, false and misleading given the dangers of Bumpers described herein. Defendants' conduct is inherently deceptive and materially misleading, which was known, or by the exercise of reasonable care, should have been known, to be untrue, deceptive or misleading by Defendants.

71. Defendants' materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiff and members of the Class.

72. Defendants' actions impact the public interest because Plaintiff and the Class have been injured in exactly the same way as millions of other consumers by Defendants' deceptive acts and practices as described herein.

73. Defendants' acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances including Plaintiff and members of the Class.

74. Defendants' violation of the CCPA was willful and knowing. As described above, at all relevant times, Defendants, among other things, knew their Bumpers had caused many infant deaths and injuries; knew the AAP, as well multiple other pediatric professionals and consumer groups, pronounced that safe infant sleep, including prolonged or overnight sleep, requires infants

to be placed supine on a flat surface without bedding, which necessarily means that Bumpers are unsafe; and knew certain other countries prohibited them from marketing and selling their Bumpers as safe crib accessories. Nonetheless, Defendants, through their misrepresentations, misleading statements, and omissions as detailed above, continued to sell the products in the United States for infant sleep, including overnight and prolonged sleep, in order to increase their own profits, all the while putting the lives of thousands, if not millions, of infants at risk.

75. Had Plaintiff and the members of the Class known of Defendants' misrepresentations, deceptive acts and practices including their misleading statements and omissions about the Bumpers, they would not have purchased and/or owned the products.

76. As a result of their unfair, unconscionable and/or deceptive acts and practices, Defendants were able to charge more for the Bumpers than what the products are worth.

77. As a direct and proximate result of Defendants' conduct in violation of the CCPA, Plaintiff and the members of the Class have sustained damages in amounts to be proven at trial.

78. As a result, pursuant to the CCPA, Plaintiff and the Class are entitled to make claims against Defendant for damages to be determined at trial, but not less than actual damages or $500 dollars per Class member.

79. Plaintiff and the Class also seek injunctive relief, including a state of the art notice program for the wide dissemination of a factually accurate recall notice for the Bumpers and the implementation of a corrective advertising campaign by Defendants.

**COUNT III**
**Breach of Implied Warranty**
**(On Behalf of Plaintiff and the Colorado Class)**

80. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

81. Pursuant to C.R.S.A. § 4-2-314, a warranty that the Bumpers were in merchantable

condition was implied by law in the sale of the product. Defendants impliedly warranted that the Bumpers were of a merchantable quality.

82. Pursuant to C.R.S.A. § 4-2-315, a warranty that the Bumpers were appropriate for safe infant sleep, including prolonged or overnight sleep, was implied by law.

83. By placing the Bumpers in the stream of commerce, Defendants impliedly warranted that the Bumpers are safe, and that all claims in their advertising and marketing of the Bumpers were true, including that the Bumpers are safe for infant sleep, including prolonged or overnight sleep.

84. As merchants, Defendants knew that consumers, including Plaintiff and the Class, relied upon Defendants to design, manufacture, distribute, market, advertise, label, and sell products that are safe and not deceptively marketed, and in fact members of the public, including Plaintiff and the Class, reasonably relied upon the skill and judgment of Defendants, and Defendants' "brand" of utmost safety in products for children, and upon said implied warranties in purchasing the Bumpers.

85. Defendants breached the implied warranty of merchantability because crib bumpers/crib wraps, to be merchantable, must provide a suitable and safe sleeping environment, including for prolonged periods or overnight, and the Bumpers do not.

86. Crib Bumpers are dangerous in that they are of such a character that when used in their expected manner, they are likely to be a source of potential death and injury to babies.

87. Plaintiff and members of the Class are among those intended to be the ultimate consumers of Bumpers.

88. At all times that Defendants warranted and sold the Bumpers, they knew or should have known that their warranties were false, and yet they did not disclose the truth, or stop

manufacturing or selling the Bumpers, and instead continued to issue false warranties, and continued to insist the product is safe.

89. The Bumpers were defective when Defendants delivered the sleepers to their resellers, dealers, and distributors which sold the Bumpers, and the Bumpers were therefore still defective when they reached Plaintiff and the Class.

90. Defendants, resellers, dealers, and distributors are intermediaries between Defendants and consumers. These intermediaries sell Bumpers to consumers and are not, themselves, consumers of Bumpers, and therefore have no rights against Defendants with respect to Plaintiff's and all other Class members' acquisition of Bumpers. Defendants' warranties were designed to influence consumers who purchased and/or owned Bumpers.

91. Plaintiff's and each Class member's acquisition of the Bumpers suffices to create privity of contract between Plaintiff and all other members of the Class, on the one hand, and Defendants, on the other hand; however, privity of contract need not be established nor is it required because Plaintiff and the Class members are intended third-party beneficiaries of contracts between Defendants and their resellers, authorized dealers, and, specifically, of Defendants' implied warranties.

92. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and the Class are entitled to damages in an amount to be determined at trial.

**COUNT IV**
**Negligence**
**(On Behalf of Plaintiff and the Colorado Class)**

93. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

94. This Count is brought on behalf of Plaintiff and the Colorado Class ("Class" for the purposes of this Count).

95. Defendants owed a duty to Plaintiff and Class members to exercise reasonable care in designing, manufacturing, distributing, marketing, advertising, labeling and selling products for infant use.

96. Defendants also owed a duty to Class members to detect and address major defects in a timely manner.

97. Defendants also owed a duty to disclose the material fact that Bumpers were defective and dangerous, and unfit and inherently unsafe for infant sleep, including prolonged or overnight sleep.

98. Had Plaintiff and the members of the Class known of Defendants' breaches of their duties they would not have purchased and/or owned Bumpers.

99. Defendants benefitted from their breaches of their duties because they were able to sell millions of their Bumpers, and were able to charge more for the products than they are worth.

100. Plaintiff and Class members were foreseeable victims of Defendants' wrongdoing. Defendants knew or should have known that their Bumpers would cause damages to Class members. The damages to Plaintiff and the Class members are a proximate, reasonably foreseeable result of Defendants' breaches of their duties.

101. Therefore, Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Colorado Class)**

102. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

103. This Count is brought on behalf of Plaintiff and the Colorado Class ("Class" for the purposes of this Count).

104. As a result of Defendants' material, deceptive design, manufacture, distribution, marketing, advertising, labeling, and sale of the Bumpers, Defendants were unjustly enriched at the expense of Plaintiff and all other Class members through the purchase of the Bumpers, because they are unsafe and dangerous and unfit for their stated purpose of safe infant sleep, including for overnight and prolonged sleep.

105. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class as the result of their deceptive marketing and advertising practices. Thus, it would be inequitable for Defendants to retain the benefit without restitution to Plaintiff and the Class.

**COUNT VI**
**Declaratory Judgment**
**(On Behalf of Plaintiff, the Nationwide Class, and the Colorado Class)**

106. As a result of Defendants' misleading and fraudulent actions and omissions, Plaintiff and the Class are entitled to declaratory relief, as permitted by equity, including directing Defendants to identify, with Court supervision, the victims of their misconduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be unlawful, and ordering Defendants to engage in a corrective advertising campaign to place victims of their misconduct on notice of the availability of a full refund.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests relief against Defendants as set forth below:

1. Certifying the proposed Nationwide Class and Colorado Class;
2. Appointing Plaintiff as Class representative and her undersigned counsel as Class counsel;

3. Awarding Plaintiff and the proposed Class members damages;
4. Awarding punitive damages to the extent permitted under Colorado and other applicable law;
5. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;
6. Awarding declaratory relief as permitted by equity, including directing Defendants to identify, with Court supervision, the victims of their misconduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be unlawful;
7. Ordering Defendants to issue a recall of all crib bumpers and engage in a corrective advertising campaign;
8. Awarding attorneys' fees and costs; and
9. Granting such additional relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated: December 10, 2019

Respectfully submitted,

/s/ Mark A. Smith

Mark A. Smith, OBA No. 31231
Caruso Law Firm, P.C.
1325 East Fifteenth Street, Suite 201
Tulsa, Oklahoma 74120
(918) 583-5900 (telephone)
(918) 583-5902 (fax)
msmith@carusolawfirm.com

Daniel E. Smolen, OBA No. 19944
Lauren Lambright, OBA No. 22300
Smolen & Roytman, PLLC
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
(918) 585-2667 (telephone)
(918) 585-2669 (fax)
danielsmolen@ssrok.com
laurenlambright@ssrok.com

*Attorneys for Plaintiffs*