## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03487-CMA-NYW

SEAN MURTAGH, *individually and on behalf of all others similarly situated*,

      Plaintiff,

v.

BED BATH & BEYOND INC., and
LEVTEX HOLDINGS, LLC

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang.

      This matter comes before the court for Recommendation on Defendants Bed Bath and Beyond Inc.'s ("BBB") and Levtex Holdings, LLC's ("Levtex"; with BBB, "Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss" or "Motion"), filed February 21, 2020.  [#20].  The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b) and the Memorandum dated February 26, 2020, [#21], and concludes that oral argument will not materially assist in the resolution of this matter. For the reasons below, this court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

      This court draws the following facts from the Amended Complaint and presumes they are true for purposes of the instant Motion.  In about 2019, Plaintiff Sean Murtagh ("Plaintiff" or "Mr. Murtagh") purchased a set of Levtex's crib Bumpers—a product designed for baby cribs to prevent babies from being trapped between the crib's slats and

cushion—from a BBB store in Colorado.  [#7 at ¶¶ 1,5].  According to Plaintiff, despite Defendants' representations that Bumpers are safe, numerous studies and prominent agencies have declared Bumpers unsafe and have linked Bumpers to infant injuries and fatalities, leading to several states banning the sale of Bumpers.  *See* [*id.* at ¶¶ 1-4, 14-38].  Plaintiff alleges Defendants were aware of the safety concerns yet continued to sell and market Bumpers to unsuspecting parents without regard to the numerous and documented safety issues.  *See* [*id.* at ¶¶ 39-51].  Mr. Murtagh alleges he purchased the Bumpers believing they were safe for his infant child, but later sought to return them and was "rejected."  [*Id.* at ¶ 5].

On December 10, 2019, Mr. Murtagh initiated this civil action on behalf of himself and a class of similarly situated individuals.  [#1].  Pursuant to his operative Amended Complaint, Mr. Murtagh seeks certification of a nationwide class and Colorado class of persons who purchased Bumpers from BBB and/or manufactured by Levtex from 2008 to present.  [#7 at ¶¶ 52-53].  Mr. Murtagh asserts seven claims against Defendants for: (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, on behalf of Plaintiff and the nationwide class ("Claim 1"); (2) violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101 *et seq.*, on behalf of Plaintiff and the Colorado class ("Claim 2"); (3) breach of implied warranty on behalf of Plaintiff and the nationwide and Colorado classes ("Claim 3"); (4) negligence on behalf of Plaintiff and the nationwide and Colorado classes ("Claim 4"); (5) unjust enrichment on behalf of Plaintiff and the nationwide and Colorado classes ("Claim 5"); (6) fraud on behalf of Plaintiff and the nationwide and Colorado classes ("Claim 6"); and (7) declaratory judgment for Plaintiff and the nationwide and Colorado classes ("Claim 7").  *See generally* [#7].

On February 21, 2020, Defendants filed the instant Motion to Dismiss. [#20]. Defendants also move to strike Plaintiff's request for punitive damages. [*Id.*]. Plaintiff has since responded in opposition and Defendants have since replied. *See* [#29; #33]. Because the Motion is ripe for recommendation, I consider the Parties' arguments below.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020) (internal quotation marks omitted). Indeed, Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and requires only that a complaint contain enough factual details to render the entitlement to relief plausible, *Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017). In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

## ANALYSIS

### I.    Application of Rule 8

Though not included in the "Argument" section of the instant Motion, Defendants first contend the Complaint fails to allege facts necessary to satisfy the pleading standards of Rule 8 of the Federal Rules of Civil Procedure. [#20 at 3]. Specifically, Defendants contend that:

> Plaintiff provides no details about any marketing message, packaging, labeling or other materials that he allegedly reviewed prior to his purchase." [*Id.*]. Further, Defendants argue that "Plaintiff also fails to allege any facts about any alleged defect in the crib bumpers in question. Not only does he fail to identify them by product name or SKU, he does not point to any problem with any aspect of their design or state how they are allegedly defective. Instead he cites to numerous unscientific articles, statements, and/or "studies" that opine that crib bumpers, in general, should not be used in cribs with sleeping babies.

[*Id.* at 4].

In Response, Plaintiff sidesteps the issue of identifying the precise product or how he was induced to purchase the Levtex crib bumpers. [#29]. Instead, Plaintiff generally argues that both BBB and Levtex "marketed them as a safe crib accessory that serve to protect babies while they sleep." [*Id.* at 2]. Plaintiff then points to language form the Safe Sleep for Babies Act of 2019, which calls for the complete ban of all crib bumpers, indicating "[t]he reason that they are so available is, because crib bumpers are featured on displays in stores, on baby registry checklists, and bundled as part of infant bedding sets. . . . Consumers trust that the products that they see on the store shelves are safe. They think that products wouldn't be sold if they were so dangerous." [*Id.* at 3].

Though Rule 8(a) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), other courts in this District

have observed that "context matters" and ""[f]air notice under Rule 8(a)(2) depends on the type of case." *Carrado v. Daimler AG*, No. 17-CV-3080-WJM-SKC, 2018 WL 4565562, at *3 (D. Colo. Sept. 24, 2018) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  Upon review, this court finds that even given the liberal standard for notice pleading pursuant to Rule 8, Plaintiff has failed to adequately give Defendants notice of the claims.

First and foremost, Plaintiff fails to identify the specific product that he purchased. There is no allegation that Defendants only offer one crib bumper, or even one type of crib bumper.  [#7].  Indeed, Plaintiff concedes that "Bed Bath and Beyond has manufactured and sold numerous types of Bumpers, including the model_s_ purchased/owned by Plaintiff."  [*Id.* at ¶ 37 (emphasis added)].  Similarly, Plaintiff concedes that Levtex has manufactured numerous types of Bumpers, including the models purchased/owned by Plaintiff.  [*Id.* at ¶ 38 (emphasis added)].  The fact that Plaintiff is referring to "models" of bumpers that he purchased, when the allegations otherwise suggest that he purchased a single set of Bumpers for his child [#7 at ¶ 5], emphasize the ambiguity of the Amended Complaint.

Nor are there factual allegations regarding the descriptions associated with the particular product purchased by Plaintiff.  Instead, Plaintiff relies on generic statements such as "[b]umpers are often marketed and sold with other baby bedding products, such as sheets and mattresses, reinforcing the idea that they are to be used while a baby is sleeping.  Description of many Bumpers include phrases such as, 'ULTIMATE PROTECTION FOR YOUR BABY' or 'keeps tiny arms and toes safely inside the crib.'" [*Id.* at ¶ 1].  But the Amended Complaint is entirely devoid of any factual allegations

regarding the particular marketing directed toward Mr. Murtagh.  Instead, there is simply a conclusory statement that "Defendants have purposefully and recklessly deceived consumers, including Plaintiff, into purchasing bumpers by marketing them not only as free from risk of harm, but as actively improving the safety of infants."  [#29 at 4 (citing [#5 at ¶¶ 34-37])].[1]  This is simply too speculative and ambiguous even for the pleading stage of litigation—particularly because this information should be firmly in the possession, custody, and control of Mr. Murtagh, who presumably still has the product-at-issue, having been "rejected" upon his attempt to return.

Furthermore, Plaintiffs seeks to bring claims not only for himself but on behalf of a nationwide class, against both BBB and Levtex without distinguishing between the two.  There are no allegations that Levtex is exclusively sold by BBB, such that the same actions could be imputed to both Defendants.  [#7].  *Cf. Carrado*, 2018 WL 4565562, at *4.  There are no allegations that distinguish between Defendants' "deceptive statements" or "deceptive claims."  *See, e.g.*, [#7 at ¶ 56].  Instead, the Amended Complaint simply conflates the two Defendants together.   Again, even at the pleading stage, this is insufficient to satisfy Rule 8.  *See Brown v. Monsanto Co.*, No. 19-1228-EFM-JPO, 2020 WL 1904022, at *5 (D. Kan. Apr. 17, 2020) (dismissing under Rule 8 because Plaintiffs' Complaint suffers from not being descriptive enough).

Finally, upon examination of the entire Amended Complaint, it appears that a single paragraph—Paragraph 5—is devoted to Mr. Murtagh's specific claims against these specific Defendants.  Otherwise, all the other paragraphs could be associated with

---

[1] Defendant cites to [#4], which is the docket entry referring to its filing fee.  This court interprets this citation as an error and considers the allegations at ¶¶ 34-37 in the operative Amended Complaint [#7 at ¶¶ 34-37].

any other case against any other Defendants. Indeed, it appears that Mr. Murtagh suggests a nationwide class challenging any crib bumpers sold and/or marketed by BBB and/or Levtex. *See generally* [#7]. And the allegations directed at Defendants are generic to "retailers and manufacturers," including Defendants. See [*Id.* at ¶¶ 34-35]. This is not a case where the plaintiff proceeds *pro se* and therefore is afforded a liberal construction of his pleading. Rule 8 requires more to give fair notice to Defendants. [2]

Accordingly, this court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**. Because this court proceeds by Recommendation, however, it also addresses other bases for dismissal, beyond Rule 8, for particular claims below to the extent that Judge Arguello disagrees with this Magistrate Judge and finds that the Amended Complaint satisfies Rule 8.

## II.   Breach of Warranty Claims – Claims 1 and 3

### A.   Applicable Law

The "Magnuson-Moss Warranty Act creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty[,]" implied warranty, or service contract. *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005) (citing 15 U.S.C. § 2310(d)(1)). Pursuant to § 2310(d)(1), an aggrieved consumer "may bring suit for damages and other legal and equitable relief[.]" 15 U.S.C. § 2310(d)(1). "Where Magnuson-Moss [Warranty Act] claims are brought for breach of

---

[2] In the alternative to dismissal, Plaintiff seeks leave to amend his Amended Complaint. [#29 at 9]. But this District's Local Rules of Civil Practice prohibit the inclusion of a motion within a response, D.C.COLO.LCivR 7.1(d), and courts may deny leave to amend in the absence of a formal motion requesting leave to amend because a "bare request to amend in response to a motion to dismiss" does not alert the court or opposing party of the request to amend or the basis for it. *See Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (internal quotation marks omitted).

a[n implied] warranty, as here, [the court] look[s] to state law to determine the causes of action and the remedies available." *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1269 (10th Cir. 2020) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the Maguson-Moss Act stand or fall with [a plaintiff's] express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."));[3] *see also Dytko v. Forest River, Inc.*, No. 16-CV-1240 SMV/GJF, 2017 WL 5611613, at *3 (D.N.M. Nov. 20, 2017) ("The failure to state a breach of warranty claim under state law will require dismissal of the state law claim as well as the 'parasitic' [Magnuson-Moss Warranty Act] claim.").

Colorado law recognizes two claims under the theory of breach of an implied warranty: (1) merchantability, Colo. Rev. Stat. § 4-2-314, and (2) fitness of particular purpose, *id.* § 4-2-315. The implied warranty of merchantability "is implied in a contract for the[] sale [of goods] if the seller is a merchant with respect to goods of that kind." *Id.* § 4-2-314(1). "The warranty of merchantability implies that goods are fit for their ordinary purposes." *Carrado*, 2018 WL 4565562, at *7. Conversely, "the warranty of fitness for a particular purpose implies a purpose other than the ordinary purpose for which the goods are used," i.e., the buyer "is obtaining the goods for use other than that which is customarily made of the goods." *Tr. Dep't of First Nat. Bank of Santa Fe, Colorado Branch v. Burton Corp.*, No. 11-CV-01629-REB-CBS, 2013 WL 4884483, at *6 (D. Colo. Sept. 11, 2013) (internal quotation marks omitted). To establish an implied warranty for

---

[3] The Parties appear to believe that Colorado law applies to Plaintiff's breach of an implied warranty claim, and thus this court applies Colorado law.

a particular purpose, a buyer must demonstrate: (1) her use of the good for a particular purpose other than its ordinary use; (2) the seller knew of this particular purpose; (3) the seller knew the buyer relied on the seller's "skill to provide a product that would satisfy the 'particular purpose'"; and (4) the buyer relied on the seller's skill. *United States Welding, Inc. v. Tecsys, Inc.*, No. 14-CV-00778-REB-MEH, 2014 WL 10321666, at *17 (D. Colo. Dec. 1, 2014). Common to both a merchantability and particular purpose claim is the need for the buyer to establish causation. *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004) (citing Colorado Jury Instructions).

## B.  Application

Defendants move to dismiss Plaintiff's Magnuson-Moss Warranty Act and Colorado implied warranty claims because Plaintiff fails to plead that crib Bumpers are not fit for their ordinary purpose or that Plaintiff purchased the crib Bumpers for a particular purpose. *See* [#20 at 10-12].[4] According to Defendants, Plaintiff fails to allege any defect in the Bumpers for purposes of an implied merchantability claim (aside from Plaintiff's subjective expectations of the Bumpers) and that Plaintiff admits he purchased the Bumpers for their ordinary purposes, i.e., protecting babies while asleep in their cribs. *See* [#33 at 6-9]. Plaintiff counters that he adequately pleaded that the Bumpers are "wholly worthless for their intended use as designed and sold" given that they are not safe for babies and that he purchased the Bumpers for the particular purpose of "prevent[ing] babies from becoming trapped between the slats of the crib and for cushioning the sides

---

[4] Defendants also group Plaintiff's unjust enrichment claim (Claim 5) with Claims 1 and 3 because they believe the unjust enrichment claim is derivative of Claims 1 and 3. This is not entirely clear, however, and so this court considers the unjust enrichment claim separately from Claims 1 and 3.

of the crib." [#29 at 10-12]. For the following reasons, I respectfully conclude Plaintiff pleads a plausible breach of an implied warranty of merchantability claim for purposes of Claims 1 and 3, but Plaintiff fails to plead a plausible breach of implied warranty for a particular purpose claim.

Plaintiff alleges that "[Bumpers] are popular products designed to wrap around the bottom perimeter of a baby's crib, purportedly to prevent babies from becoming trapped between the slats of the crib and for cushioning on the sides of the crib." [#7 at ¶ 1]. According to Mr. Murtagh, Bumpers are sold with "other baby bedding products" and are generally suggested as safe crib accessories for sleeping infants. [*Id.* at ¶¶ 1, 3, 5, 34, 39, 43, 68, 94]. Despite these representations, Mr. Murtagh alleges the Bumpers are in fact unsafe, and even deadly, for infants—a fact Defendants knew or should have known. *See* [*id.* at ¶¶ 68, 92-93, 96-97]. Assuming these allegations are sufficient for the purposes of Rule 8, I conclude Plaintiff adequately alleges a breach of the implied warranty of merchantability: he identifies the Bumpers' ordinary purpose, i.e., to keep infants safe in their cribs while sleeping, and that the Bumpers were not fit for this ordinary purpose because of the asphyxiation dangers they pose. *See Elvig v. Nintendo of Am., Inc.*, No. 08-CV-02616-MSK-MEH, 2010 WL 3803814, at *5 (D. Colo. Sept. 23, 2010) (stating, "to prevail on a claim for breach of the implied warranty of merchantability, [the plaintiff] must come forward with evidence that the safety strap was not fit for the ordinary purpose for which it was used."); *cf. Micjan v. Wal-Mart Stores, Inc.*, No. CV 14-855, 2016 WL 7212579, at *13 (W.D. Pa. Dec. 13, 2016) (concluding the defendant could be liable

for breaching an implied warranty of merchantability under Virginia law by selling a crib Bumper that asphyxiated the decedent).[5]

This court, however, agrees with Defendants that Mr. Murtagh's allegations fail to demonstrate a breach of the implied warranty of a particular purpose. While Plaintiff's Amended Complaint hints at Bumpers also doubling as an aesthetic addition to a crib, *e.g.*, [#7 at ¶¶ 1, 35], Plaintiff fails to identify any use of the Bumpers for a particular purpose other than its ordinary use or that Defendants knew of this particular purpose. Rather, Plaintiff merely states the elements of an implied warranty for a particular purpose claim, *see* [*id.* at ¶¶ 93, 95], which is insufficient. *See Carrado*, 2018 WL 4565562, at *7 (dismissing the plaintiffs' breach of an implied warranty for a particular purpose claim because the plaintiffs "do not identify *what* purpose the vehicle would be used for apart from its ordinary purpose . . . and instead merely restate the elements of a breach of implied warranty claim." (emphasis in original)); *Micjan*, 2016 WL 7212579, at *13 (dismissing the plaintiffs' breach of an implied warranty for a particular purpose claim because the regular sale of a crib Bumper "does not import a warranty for a particular purpose.").

---

[5] While Mr. Murtagh's infant son suffered no physical injury from the Bumpers, it is undisputed at this juncture that Mr. Murtagh suffered a financial injury by spending more on the Bumpers than he would have, "had [he] known of the risks the [Bumpers] posed to children," which is sufficient to demonstrate an injury in fact for purposes of standing. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (holding that the plaintiffs had standing, despite no physical injuries, because they paid more for the defective toy then they would have otherwise, had they known about the toy's defects). Defendants do not challenge whether Mr. Murtagh has standing to proceed with this purported class action.

### C.    Conclusion

Based on the foregoing, I respectfully conclude Plaintiff pleads a plausible breach of an implied warranty of merchantability claim, but he fails to allege a plausible breach of an implied warranty for a particular purpose claim.    For this reason, Plaintiff's Magnuson-Moss Warranty Act claim (Claim 1) may proceed under the theory of a breach of the implied warranty of merchantability (Claim 3).   *See Platt*, 960 F.3d at 1269.   Thus, to the extent that the Amended Complaint is sufficient for Rule 8 purposes, I respectfully **RECOMMEND** that Defendants Motion to Dismiss be **GRANTED IN PART and DENIED IN PART** as to Claims 1 and 3 and Claim 1 **REMAIN** and Claim 3 **REMAIN as modified** for only a breach of an implied warranty of <u>merchantability</u> claim.

## III.    CCPA – Claim 2

### A.    Applicable Law

The CCPA proscribes unfair or deceptive trade practices, Colo. Rev. Stat. § 6-1-105, and seeks "to deter and punish [such] practices committed by businesses in dealing with the public," *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002).  To establish a claim under the CCPA, Mr. Murtagh must allege:

    1. Defendants engaged in an unfair or deceptive trade practice;

    2. the challenged practice occurred in the course of Defendants' business;

    3. it significantly impacts the public as actual and potential consumers;

    4. Mr. Murtagh suffered an injury in fact to a legally protected interest; and

    5. the challenged practice caused Mr. Murtagh's injury.

*R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1149 (10th Cir. 2009).  "If all elements of a CCPA claim are not met, the claim fails as a matter of law."   *Henson v.*

*Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013).  And because a CCPA claim involves alleged fraudulent business practices, courts in this District apply the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure to CCPA claims. *See RV Horizons, Inc. v. Smith*, No. 1:18-CV-02780-NYW, 2019 WL 1077366, at **13-14 (D. Colo. Mar. 7, 2019).

The CCPA allows for actual or potential consumers to seek damages in a civil action against any person "who has engaged in or caused another to engage in any deceptive trade practice listed in [the CCPA]."  Colo. Rev. Stat. § 6-1-113(1)(a).  Available damages include actual damages, treble damages for bad faith conduct, and reasonable attorney's fees.  *Id.* § 6-1-113(2)(a)-(b).  These damages, however, are available only for purely private civil actions, and are explicitly excluded in class actions.  *Id.* § 6-1-113(2).

### B.    Application

Defendants move to dismiss Plaintiff's CCPA claim (Claim 2) for two reasons. First, Plaintiff cannot maintain a class action under the CCPA.  *See* [#20 at 6-8; #33 at 2-4].  Second, even if Plaintiff could maintain a class action under the CCPA, he fails to plead any fraudulent business practices with particularity under Rule 9(b).  *See* [#20 at 9-10; #33 at 4-6].  I respectfully agree with Defendants.

***Class Actions Under the CCPA***.  As mentioned, the CCPA excludes the recovery of actual damages, treble damages for bad faith conduct, and reasonable attorney fees in class actions.  Colo. Rev. Stat. § 6-1-113(2) ("Except in a class action . . . any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice . . . is liable in an amount equal to the sum of: . . . ." (emphasis added)).  Consistent with this directive, several courts have held that the CCPA

"creates no statutory liability for a defendant in a private class action." *Pearson v. Geico Cas. Co.*, No. 17-CV-02116-CMA-MEH, 2018 WL 2096348, at *9 (D. Colo. May 7, 2018) (internal quotation marks omitted) (citing *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-19 (D. Colo. 2012) (concluding that § 6-1-113(2) "defines a defendant's liability under the CCPA in a private action.  It limits such liability to specified remedies, and expressly states that such remedies are not applicable in class actions.  By logical extension, the CCPA creates no statutory liability for a defendant in a private class action."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD, 2015 WL 4036319, at **2-3 (D. Colo. July 1, 2015) (concluding "a class action for damages under the CCPA is barred," but also acknowledging courts concluding otherwise; *In re Syngenta AG MIR 162 Corn Litig.*, 131 F.Supp.3d 1177, 1234-35 (D. Kan. 2015) ("the plain language of the present statute precludes a class action claim for actual damages"); *In re Santa Fe Natural Tobacco Co. Marketing & Sales Practices & Prods. Liability Litig.*, 288 F.Supp.3d 1087, 1260 (D.N.M. 2017) ("The CCPA's statutory language, however, expressly prohibits class action recovery for damages.")); *see also Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL 2325426, at *11 (N.D. Cal. May 8, 2018) (denying class certification on the plaintiffs' CCPA claim because the CCPA barred class claims for damages).

Notwithstanding the above, Mr. Murtagh argues that he may proceed with a class action under the CCPA.  He argues that the CCPA's exclusion of damages in class actions is merely a procedural rule, not a substantive rule, and thus Rule 23 of the Federal Rules of Civil Procedure controls.  [#29 at 5-7].  This is because, according to Mr. Murtagh, the CCPA's exclusion of damages in class actions proscribes only who may

seek damages but does not alter any substantive rights.  *See* [*id.* at 7-8].  I respectfully disagree.

"In diversity cases, the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law.  If a federal rule of civil procedure answers the question in dispute, that rule governs our decision so long as it does not exceed statutory authorization or Congress's rulemaking power."  *Racher v. Westlake Nursing Home Ltd. P'ship,* 871 F.3d 1152, 1162 (10th Cir. 2017) (brackets and internal citations and quotation marks omitted).[6]  In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, 559 U.S. 393 (2010), the Supreme Court of the United States considered a similar issue as to that here: whether a New York state law that "prohibit[ed] class actions in suits seeking penalties or statutory minimum damages" also "preclud[ed] a federal district court sitting in diversity from entertaining a class action under Federal Rule of Civil Procedure 23."  *Id.* at 396 (plurality opinion) (footnotes omitted).  The Supreme Court ultimately held that Rule 23 authorized the class action.  *Id.* at 410 (plurality opinion); *id.* at 416 (Stevens, J., concurring in part and concurring in judgment). Justice Scalia, writing for a four-justice plurality, concluded that Rule 23 controlled the dispute because federal courts exercising diversity jurisdiction apply federal procedural law and Rule 23 unequivocally (and legally) allowed any claim in federal court to proceed

---

[6] Although Plaintiff invokes the court's jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332(d) (diversity under the Class Action Fairness Act), and 1367 (supplemental jurisdiction), the inquiry remains the same.  *See Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002) ("While *Erie* questions arise most frequently in diversity cases, the Supreme Court has made clear that the doctrine applies equally to state law claims like Houben's that are brought to the federal courts through supplemental jurisdiction under 28 U.S.C. § 1367." (internal parenthesis omitted) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988))).

as a class action so long as the conditions of Rule 23 were satisfied. *See id.* at 398-410 (plurality opinion).   Justice Stevens agreed that Rule 23 controlled but did so after concluding the New York law was procedural in nature, and therefore applying Rule 23 did not "abridge, enlarge or modify New York's substantive rights or remedies." *Id.* at 416-36 (Stevens, J., concurring in part and concurring in judgment).

In determining "the applicability of a federal rule or state law," the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") "has understood [Justice Steven's] concurrence to be the controlling opinion in *Shady Grove*." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) (citing *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 n. 6 (10th Cir. 2010) ("we look to Justice Stevens' concurrence for guidance on [whether a federal rule or state law governs].")).   Pursuant to Justice Stevens's Concurrence, courts must determine first whether the federal rule and state law conflict; if there is no "direct collision," courts proceed under the *Erie* analysis.   *Racher*, 871 F.3d at 1162-63 (citing *Shady Grove*, 559 U.S. at 421 (Stevens, J., concurring in part and concurring in judgment)).   If the federal rule and state law do conflict, courts must determine second whether the federal rule is valid, meaning it does "not abridge, enlarge or modify *any* substantive right." *James River Ins. Co.*, 658 F.3d at 1218 (quoting *Shady Grove*, 559 U.S. at 421-422 (Stevens, J., concurring in part and concurring in judgment)).

Applying that analysis here, I conclude the CCPA's exclusion of class actions controls, not Rule 23.   First, there appears no dispute that the CCPA directly conflicts with Rule 23, as the former precludes private class actions and the latter does not.   Second, applying Rule 23 to private CCPA claims would "abridge, enlarge or modify" a state

substantive right or remedy—something it may not do under the Rules Enabling Act. Unlike the New York law in *Shady Grove*, which unambiguously applied to all claims (whether New York law, federal law, or otherwise) and therefore did not define New York's rights or remedies, *Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring in part and concurring in judgment), the CCPA's class action exclusion is "ingrained in the vert text of the [CCPA]" such that Rule 23 cannot trump it, *see Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013) (concluding under Justice Stevens's concurrence in *Shady Grove* that the South Carolina Unfair Trade Practices Act's prohibition on private class actions controlled because it was a "substantive portion[] of South Carolina law"). This is because allowing private class actions under the CCPA, where no such actions are contemplated either by private individuals, the Attorney General, or district attorneys, would logically "enlarge or modify" the substantive rights or remedies conferred under the CCPA. *See Davidson*, 2018 WL 2325426, at *11 (agreeing with courts that the CCPA's class action bar applies under Justice Stevens's concurrence in *Shady Grove*).

At least one other court in this District has similarly concluded that the CCPA's class action bar controls under Justice Stevens's concurrence in *Shady Grove*. In *Friedman v. Dollar Thrifty Automotive Group, Inc.*, the court considered the impact *Shady Grove* had on the court's analysis and acknowledged that Justice Stevens's concurrence controlled in the Tenth Circuit. *See* 2015 WL 8479746, at **2-4. The *Friedman* court then found persuasive other courts' consideration of class action bars in similar state consumer protection laws, noting that such decisions under Justice Stevens's concurrence concluded "the class action-action prohibition defines the scope of the state-created right,

namely the right to bring a lawsuit for violations of the state's consumer-protection law," *id.* at \*4 (quoting *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014)), were so "ingrained" in the text of the state consumer protection law, and were limited to only consumer protection claims, *see id.* Accordingly, the *Friedman* court concluded the CCPA's class action bar controlled, not Rule 23, because "under Justice Stevens'[s] analysis [] the class action restriction in the CCPA is substantive, not procedural, as the restriction on class actions in the CCPA is part of the State of Colorado's framework of substantive rights or remedies." *Id.* at \*5.

Mr. Murtagh asks this court to go against Tenth Circuit precedent and persuasive authority from this District to conclude Rule 23 trumps the CCPA's class action bar. But Mr. Murtagh provides no convincing reason for this court to ignore the Tenth Circuit's command that "[w]hen faced with a choice between a state law and an allegedly conflicting federal rule, we follow the framework described by the Supreme Court in *Shady Grove*, as laid out by Justice Stevens in his concurring opinion." *Racher*, 871 F.3d at 1162. For this reason, and others, this court finds Plaintiff's reliance on *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) misplaced. There the Eleventh Circuit declined to explicitly adopt either the plurality's or Justice Stevens's approach, and instead relied on the judgment that Rule 23 trumped the New York law's class action bar. *See id.* at 1335 ("Regardless of which *Shady Grove* opinion is binding, the *holding* is binding. On this there can be no dispute." (emphasis in original)). Moreover, the law at issue in *Lisk* provided for class actions but only by the state's Attorney General or a district attorney and so Rule 23 did not "abridge, enlarge or modify" any substantive right, it only altered <u>who</u> could bring a class action. *See id.* at 1334, 1336.

18

*But see Delgado v. Ocwen Loan Servicing, LLC*, No. 13CV4427NGGST, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (The decision in *Lisk* has not been widely followed outside of the Eleventh Circuit [] with most courts outside of that circuit implicitly or explicitly disagreeing with its interpretation of *Shady Grove*" (collecting cases)).  But the CCPA does not contemplate a class action under any circumstances; thus, following *Lisk's* direction would essentially create a new substantive right where one does not exist.

Nor is this court convinced that the Ohio Consumer Sales Practices Act, which identifies when a plaintiff may bring a class action based on certain conditions, *see Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033-CIV, 2018 WL 4623539, at *13 (S.D. Fla. Sept. 26, 2018), renders the CCPA's class action bar more akin to that in *Shady Grove*. While the Ohio law may also be characterized as substantive, this does not negate this court's conclusion under Justice Stevens's concurrence framework that the CCPA's class action bar is also substantive.  Accordingly, I respectfully conclude that Mr. Murtagh cannot maintain a class action under his CCPA claim (Claim 2).

***Particularity***.  Notwithstanding this court's conclusion that Mr. Murtagh cannot maintain his CCPA as a class action, he must nevertheless plead this claim (either as a class or individually) with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  *See Two Moms & a Toy, LLC v. Int'l Playthings, LLC*, 898 F. Supp. 2d 1213, 1219 (D. Colo. 2012).  Defendants argue Mr. Murtagh has failed to meet this heightened showing.  *See* [#20 at 8-9; #33 at 4-6].  For the following reasons, I respectfully agree.

When a plaintiff alleges fraud or mistake, Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake."  The rule's purpose is to "to afford defendant[s] fair notice" of a plaintiff's claims and the factual grounds

supporting those claims, *George v. Urban Settlement Svcs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)), such that the defendant is provided the "minimum degree of detail necessary to begin a competent defense." *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015). That is, the pleading must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (internal quotation marks omitted). For purposes of the CCPA, Rule 9(b) requires plaintiffs to adequately allege the "time and place" of the "alleged unfair or deceptive trade practices so as to give notice to [the defendant]." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011).

At bottom, Mr. Murtagh's CCPA claim (Claim 2) rests on his assertions that Defendants marketed and sold Bumpers, claiming they were safe for infants when they knew about or should have known about the serious safety risks associated with Bumpers. *See, e.g.*, [#7 at ¶¶ 1, 3, 34-36, 39, 41, 45, 79-80, 84]. Mr. Murtagh avers Defendants knew or should have known of the various studies and reports documenting the dangers of Bumpers, yet fraudulently concealed such risks and fraudulently misrepresented that the Bumpers were safe. *See generally* [*id.*]. Mr. Murtagh argues these allegations place Defendants on notice of the alleged deceptive and unfair trade practice for purposes of Rule 9(b). [#29 at 9]. I respectfully disagree.

In *Two Moms and a Toy, LLC v. International Playthings, LLC*, a court in this District held that allegations like Mr. Murtagh's were insufficient to plead a CCPA claim with the requisite particularity. 898 F. Supp. 2d at 1220. There, the plaintiff merely alleged

the defendant knowingly made false representations regarding patent applications even though it had not filed any applications; falsely represented the quality of its product by noting "patent pending"; and withheld material information regarding patent applications to induce purchases. *Id.* at 1219-20. The court held, "these facts are insufficient to show that [the defendant] sanctioned the use of the 'patent pending' label on [its product] with the knowledge that the label was false." *Id.* at 1220. The same is true here.

Likewise, in *Carrado v. Daimler AG*, the court dismissed a CCPA claim for failure to satisfy Rule 9(b)'s heightened pleading standard. 2018 WL 4565562, at \*\*5-6. There, the plaintiff generally alleged:

> [the defendant] "made false representations to the effect that the [product] [was] of a particular standard and quality"; that it was [the defendant's] "general practice to offer products and services to Colorado consumers and to advertise and represent such products and services as safe and/or non-defective"; and that [the defendant] engaged in deceptive trade practices by "making false or misleading statements of fact concerning the safety of products[.]"

*Id.* at \*5 (internal citations omitted). The *Carrado* court concluded that these allegations failed to include "the contents, time, or place of the allegedly false representations." *Id.* Mr. Murtagh makes the same generalized allegations against Defendants. Further, like the plaintiffs in *Carrado*, Mr. Murtagh lumps Defendants together, which does not satisfy Rule 9(b) because "the identity of the party making false statements must be pled with particularity." *Id.*

Finally, as to any fraudulent omissions, Mr. Murtagh's allegations fail to identify "the particular information that should have been disclosed, the reason the information should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed."

*Martinez*, 886 F. Supp. 2d at 1216 (internal quotation marks omitted).  Accordingly, Mr. Murtagh fails to allege his CCPA claim (Claim 2) with the requisite particularity under Rule 9(b).

### C.    Conclusion

Based on the foregoing, this court respectfully concludes that Mr. Murtagh may not maintain his CCPA claim as a class action and that Mr. Murtagh fails to plead a CCPA claim (either on class-wide or individual basis) with the requisite particularity under Rule 9(b).  Thus, even assuming the Amended Complaint survives dismissal pursuant to Rule 8, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** as to Claim 2 and Claim 2 be **DISMISSED**.

### IV.    Negligence – Claim 4

### A.    Applicable Law

To state a negligence claim under Colorado law, a plaintiff must allege:

1. Defendants owed Mr. Murtagh a duty of care;

2. Defendants breached that duty; and

3. Defendants' breach proximately caused Mr. Murtagh's injuries.

*Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1146 (D. Colo. 2019) (citing *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005)).  A negligent misrepresentation claim requires Mr. Murtagh to plead (1) Defendants, in the course of their business, (2) made a misrepresentation of material fact, without reasonable care, (3) for the guidance of others in their business transactions, (4) with knowledge that Mr. Murtagh

would rely on Defendants' representations, and (5) Mr. Murtagh justifiably relied on the misrepresentation to his detriment.  *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011).[7]

### B.    Application

As with Plaintiff's other claims, Mr. Murtagh predicates his negligence claim on the Defendants' alleged marketing and selling Bumpers as safe despite the known safety risks.  *See generally* [#7 at ¶¶ 1, 3, 34-36, 39, 41, 45, 79-80, 84].  According to Mr. Murtagh, Defendants owed and breached their duties to (1) "exercise reasonable care in designing, manufacturing, distributing, marketing, advertising, labeling, and selling products for infant use"; (2) "detect and address major defects in a timely manner"; and (3) disclose the material fact that Bumpers were defective and dangerous, and unfit and inherently unsafe for infant sleep."  [*Id.* at ¶¶ 106-08].  Based on Defendants' conduct, Plaintiff alleges he (and the purported class members) relied on Defendants' representations to their detriments by paying more for Bumpers than they would have otherwise.  *See* [*id.* at ¶¶ 109-11].

Defendants move to dismiss Plaintiff's negligence claim (Claim 4) because Plaintiff fails to plead facts "supporting his conclusory allegations that Defendants breach any duty," and Plaintiff fails to allege any injury attributable to Defendants.  [#20 at 13-14; #33 at 9].  Plaintiff responds that he adequately pleads Defendants owed various duties of

---

[7] The Colorado Supreme has not determined whether a negligent misrepresentation claim can be premised on an omission or nondisclosure. *See, e.g., Leprino Foods Co. v. DCI, Inc.*, 727 F. App'x 464, 472 n.5 (10th Cir. 2018) ("[I]t is unclear whether a claim for negligent nondisclosure is viable at all in Colorado."); *Haney v. Castle Meadows, Inc.*, 839 F. Supp. 753, 756-57 (D. Colo. 1993) (concluding that Colorado would not recognize a tort for negligent concealment in a vendor/purchaser situation, because the concealment of a material fact would be an affirmative act more appropriately sounding in fraud).  For this reason, this court considers only whether Mr. Murtagh pleads viable negligence and/or negligent misrepresentation claims.

care to Plaintiff (and others), that Defendants breached that duty by continuing to sell Bumpers that were unsafe but holding them out as same for infants, and that this caused Plaintiff's injuries.   *See* [#29 at 13-14].   While this court would prefer more robust pleadings, I conclude Plaintiff pleads a viable negligence claim against Defendants.

"The threshold question in any negligence action is therefore 'whether the defendant owed a legal duty to protect the plaintiff against injury.'"   *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995) (quoting *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992)).   "The question of whether a duty exists is a question of law." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1163 (10th Cir. 2008) (internal quotation marks omitted).

Relevant here, this court concludes Defendants owed Plaintiff (and others) a duty "to act reasonably in the design, manufacture, and sale of the[ir] product," *Bartholic v. Scripto-Tokai Corp.*, 140 F. Supp. 2d 1098, 1116 (D. Colo. 2000), which includes "providing adequate warnings," *Halliburton v. Public Serv. Co.*, 804 P.2d 213, 216-217 (Colo. App. 1990) (explaining that duties under products liability claims are applicable to negligence claims).   Plaintiff alleges Defendants breach this duty by manufacturing, marketing, and selling Bumpers that were unsafe for prolonged infant sleep and did so even though they knew or should have known that Bumpers were unsafe.   Further, Plaintiff alleges Defendants promoted the Bumpers as safe without regard to the studies and reports suggesting otherwise.   While these allegations may not be particular enough for Rule 9(b) purposes, assuming they are sufficient under Rules 8(a), Plaintiff should be permitted to proceed on his negligence claim based on Defendants' alleged breaches of their duties to (1) "exercise reasonable care in designing, manufacturing, distributing,

marketing, advertising, labeling, and selling products for infant use" and (3) "disclose the material fact that Bumpers were defective and dangerous, and unfit and inherently unsafe for infant sleep." [*Id.* at ¶¶ 106, 108]; *cf. Colorado Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 31 (Colo. App. 2010) (explaining that negligent misrepresentation claims require an allegation as to what the defendant "affirmatively represented, not what it failed to disclose."). But Plaintiff fails to allege anything more than conclusory assertions as to any alleged duty to timely detect and address major defects in the Bumpers.

### C.    Conclusion

Based on the foregoing, assuming that the Amended Complaint survives Rule 8 scrutiny, this court respectfully concludes Mr. Murtagh pleads a plausible negligence and/or negligent misrepresentation claim against Defendants based on their alleged breaches of the duties to (1) "exercise reasonable care in designing, manufacturing, distributing, marketing, advertising, labeling, and selling products for infant use" and (3) "disclose the material fact that Bumpers were defective and dangerous, and unfit and inherently unsafe for infant sleep." [*Id.* at ¶¶ 106, 108]. Thus, in alternative to dismissal pursuant to Rule 8, I respectfully **RECOMMEND** that Defendants Motion to Dismiss be **DENIED** as to Claim 4 and Claim 4 **REMAIN as modified**.

## V.    Unjust Enrichment – Claim 5

### A.    Applicable Law

In Colorado, "unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another," and "centers [its] attention on the prevention of injustice." *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1130 (10th Cir. 2008) (citations and internal quotation marks omitted) (applying Colorado law). To

plead a plausible unjust enrichment claim, Mr. Murtagh must allege (1) Defendants received a benefit (2) at Mr. Murtagh's (and others') expense and (3) it would be unjust to allow Defendants to retain the benefit without commensurate compensation. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 923 (10th Cir. 2018) (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)).   Under the circumstances here, Plaintiff's unjust enrichment claim does not arise from a quasi or implied contract, but rather the alleged tortious conduct of Defendants.   *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007-08 (Colo. 2008) (holding that an unjust enrichment claim based on the sale and purchase of lottery tickets sold by the defendant even after all prizes were claimed sounded in tort).

### B.    Application

Mr. Murtagh's unjust enrichment claim alleges it would be unjust to allow Defendants to retain their "ill-gotten benefits" received from their deceptive marketing and selling of Bumpers as safe for infants.  [#7 at ¶ 116].  Further, Plaintiff alleges he (and others) would not have purchased the Bumpers had he known they were unsafe for infants.  [*Id.* at ¶¶ 5, 115].

Defendants move to dismiss Claim 5 based on their belief that this claim is derivative of Plaintiff's warranty-based claims (Claims 1 and 3) and, because Claims 1 and 3 fail to plead plausible warranty claims, so too does Plaintiff's unjust enrichment claim.  [#20 at 10, 12; #33 at 9].  But, as this court noted, *see supra*, at n. 2, it is not clear that the unjust enrichment claim is derivative of the warranty-based claims—even if it was, this court concluded that the warranty-based claims (Claims 1 and 3) remained as modified.  At bottom, Plaintiff pleads a plausible unjust enrichment claim: Defendants received a benefit from the sale of the Bumpers at Plaintiff's expense and it would be

unjust to allow Defendants to retain the profits from this sale (and others) because the Defendants misrepresented the apparent safety of the Bumpers. *Cf. Robinson*, 179 P.3d at 1007-08.

### C.    Conclusion

Based on the foregoing, assuming the Amended Complaint survives Rule 8, I conclude Plaintiff pleads a plausible unjust enrichment claim against Defendants.  Thus, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **DENIED** as to Claim 5 and Claim 5 **REMAIN**.

## VI.   Fraud – Claim 6

### A.    Applicable Law

To plead a fraud claim under Colorado law, Mr. Murtagh must allege:

1. Defendants made a false representation of material fact;

2. Defendants knew the representation was false;

3. Mr. Murtagh was ignorant of the representation's falsity;

4. Defendants intended Mr. Murtagh to act on the false representation; and

5. Mr. Murtagh relied on the false representation to his detriment.

*Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013).  For a fraudulent concealment claim, Mr. Murtagh must demonstrate substantially the same elements based on Defendants' concealment of a material fact that they were obligated to disclose. *See Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016).  As with claims under the CCPA, Rule 9(b) requires Mr. Murtagh to plead his fraud claim with particularity, meaning he must allege "the who, what, when, where, and how of the alleged fraud—in other words, the time, place, and contents of the false representation, the

27

identity of the party making the false statements and the consequences thereof." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010) (internal quotation marks omitted).

**B.    Application**

Like Mr. Murtagh's CCPA claim, Defendants move to dismiss Plaintiff's fraud claim (Claim 6) because Plaintiff fails to plead fraud with the requisite particularity.  [#20 at 9-10; #33 at 5-6].  They contend Plaintiff fails to allege the date, time, place, identity, or any other circumstances regarding Defendants' false representations or fraudulent omissions. *See* [#20 at 9-10; #33 at 5-6].   Again, Plaintiff contends his general allegations that Defendant knew or should have known that the Bumpers were harmful and their continued representations to the contrary are sufficient to plead fraud with particularity. *See* [#29 at 9].  For the reasons discussed *supra*, Part III.B, I respectfully conclude Plaintiff fails to plead fraud with the requisite particularity.  This is because Plaintiff only offers generalized allegations of fraudulent conduct, without distinguishing between BBB and Levtex, and provides no specificity as to which Defendant made which false statement, or when, or what they should have disclosed.  *See Tara Woods Ltd. P'ship*, 731 F. Supp. 2d at 1114.

**C.    Conclusion**

Based on the foregoing, even assuming the Amended Complaint survives Rule 8, I respectfully conclude that Mr. Murtagh fails to plead his fraud claim (Claim 6) with the requisite particularity under Rule 9(b).   Thus, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** as to Claim 6 and Claim 6 be **DISMISSED**.

VII.    **Declaratory Judgment – Claim 7**

A.    **Applicable Law**

The Declaratory Judgment Act provides: "In a case or controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty." *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1151 (10th Cir. 1974). "The [Declaratory Judgment] Act merely provides a procedure empowering a federal court to declare the legal rights and obligations of adversaries engaged in a justiciable controversy." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989).

B.    **Application**

Plaintiff's claim for declaratory judgment (Claim 7) states,

> As a result of Defendants' misleading and fraudulent actions and omissions, Plaintiff and the Class are entitled to declaratory relief, as permitted by equity, including directing Defendants to identify, with Court supervision, the victims of their misconduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be unlawful, and ordering Defendants to engage in a corrective advertising campaign to place victims of their misconduct on notice of the availability of a full refund.

[#7 at ¶ 123].   Defendants move to dismiss Claim 7 because it "does not seek a declaration of any right or obligation but, instead, appears to seek monetary damages and injunctive relief." [#20 at 14]. I respectfully agree.

It appears that Claim 7 does not seek any declaration of the right or other legal obligations between the parties. *Cf. Bellwether Cmty. Credit Union v. Chipotle Mexican*

*Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018) (finding a plausible Declaratory Judgment Act claim where the plaintiffs sought a declaration that the defendant "owe[d] them a legal duty to secure payment card data, that [the defendant] continues to breach this legal duty, and that these ongoing breaches of duty continue to cause harm to [the plaintiffs]").   Rather, it appears Plaintiff merely seeks declaratory and injunctive <u>relief</u>, which are not separate causes of action.  *See id.*  Moreover, a declaratory judgment action cannot lie where the plaintiff seeks only a declaration of past liability.  *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 921 F. Supp. 2d 1137, 1187 (D.N.M. 2013). While Plaintiff may seek declaratory and/or injunctive relief, I respectfully conclude that he fails to plead a plausible Declaratory Judgment Act claim.

### C.      Conclusion

Based on the foregoing, I conclude Mr. Murtagh fails to plead a plausible Declaratory Judgment Act claim.  Thus, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **GRANTED** as to Claim 7 and Claim 7 be **DISMISSED** in any event.

## VIII.   Statute of Limitations

### A.      Applicable Law

Courts may dismiss certain claims on statute of limitations grounds at the motion to dismiss phase only when "the dates given in the complaint make clear that the right sued upon has been extinguished."  *Colby v. Herrick*, 849 F.3d 1273, 1279 (10th Cir. 2017).  But the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and a plaintiff need not anticipate affirmative defenses in its complaint; the burden of pleading affirmative defenses rests with the defendant, *see Ghailani v. Sessions*, 859 F.3d 1295, 1306 (10th Cir. 2017).

### B.  Application

In passing, Defendants argue the applicable statutes of limitations bars Mr. Murtagh's claims that accrued prior to December 20, 2016, i.e., three years prior to the filing of the Amended Complaint.  [#20 at 15; #33 at 10].  Defendants suggest dismissal is appropriate because, like his allegations of fraud, Mr. Murtagh fails to plead any basis for tolling the applicable statutes of limitations.  [#20 at 15].

Plaintiff does not respond to Defendants' arguments, but this court respectfully concludes that it is premature at this juncture to dismiss Plaintiff's claims that accrued prior to December 20, 2016.  While the Amended Complaint purports to seek relief for claims dating as far back as 2008, *see* [#7 at ¶¶ 52-53], Plaintiff raises three reasons for tolling the applicable statutes of limitations—continuing violation, fraudulent concealment, and equitable estoppel.  *See* [#7 at ¶¶ 39-51].  Although Defendants suggest Plaintiff fails to plead any basis for tolling, neither party sufficiently briefs the issue, and I nonetheless find sufficient at this juncture Plaintiff's asserted theories for tolling the applicable statutes of limitations.  *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299-1300 (10th Cir. 2018) (concluding that the plaintiffs' allegations of "deliberate, intentional, and willful" were sufficient (i.e., plausible) at the motion to dismiss phase to plead willfulness, even under Rule 9(b), for purposes of assuming the three-year statute of limitations for willful conduct applied under the Fair Labor Standards Act).  While Mr. Murtagh will ultimately bear the burden of persuasion on the timeliness of his claims, the burden of pleading the statute of limitations rests with Defendants.  *See id.* at 1299 (explaining that the statute of limitations "is one of the unusual circumstances where the burdens of pleading and persuasion are not on the same party.").

## C.    Conclusion

Based on the foregoing, I conclude it is premature to dismiss any of Plaintiff's remaining claims on statute of limitations grounds.  Thus, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss be **DENIED** in this regard.

## IX.    Punitive Damages

### A.    Applicable Law

Under Colorado law, a litigant is entitled to an award of exemplary (i.e., punitive) damages if the "wrong done . . . is attended by circumstances of fraud, malice, or willful and wanton conduct[.]"  Colo. Rev. Stat. § 13-21-102(1)(a).  But an initial complaint cannot contain a request for exemplary damages; only after the parties exchange initial disclosures may a party move to amend her pleading to include such a request and only if she "establishes prima facie proof of a triable issue."  *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1073 (D. Colo. 2019) (quoting Colo. Rev. Stat. § 13-21-102(1)(a)).  Courts in this District have found no conflict between Colo. Rev. Stat. § 13-21-102 and the Federal Rules of Civil Procedure and have held that Colo. Rev. Stat. § 13-21-102 controls whether to permit amendment of a pleading to assert a request for exemplary damages.  *See Wollam v. Wright Medical Group, Inc.*, No. 1:10-cv-3104-DME-BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012); *Witt v. Condominiums at the Boulders Ass'n,* No. 04-cv-02000-MSK-OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006).

### B.    Application

Defendants move to strike Plaintiff's request for punitive damages in his Amended Complaint, *see* [#7 at p. 26, ¶ 4], because Mr. Murtagh has not complied with the

requirements of Colo. Rev. Stat. § 13-21-102(1.5)(a), *see* [#20 at 14-15; #33 at 10]. Plaintiff does not dispute this point.  Thus, I conclude Mr. Murtagh fails to comply with the requirements under Colorado law that govern requests for punitive damages. *See Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-CV-01398-PAB-KLM, 2011 WL 2415167, at *6 (D. Colo. June 10, 2011) (striking the plaintiff's request for exemplary damages contained in the complaint for failure to comply with Colo. Rev. Stat. § 13-21-102(1.5)(a)); *Glaser v. Jordan*, No. 09-CV-01758-REB-MJW, 2010 WL 1268151, at *2 (D.Colo. March 30, 2010) (same).

### C.   Conclusion

Based on the foregoing, this court concludes that Mr. Murtagh failed to comply with Colo. Rev. Stat. § 13-21-102(1.5)(a).  Thus, this court respectfully **RECOMMENDS** that Plaintiff's request for punitive damages in his Amended Complaint be **STRICKEN**.[8]

### CONCLUSION

For the reasons above, this court respectfully **RECOMMENDS** that:

(1)   Defendants' Motion to Dismiss [#20] be **GRANTED**; or

(2)   **In the alternative**, to the extent that the presiding Judge finds that the Amended Complaint survives Rule 8**,** be **GRANTED IN PART and DENIED IN PART** as follows:

(a)   Claim 1 **REMAIN**,

(b)   Claim 2 be **DISMISSED**,

(c)   Claim 3 **REMAIN as modified**,

---

[8] This conclusion in no way suggests Plaintiff cannot seek to amend his Amended Complaint pursuant to Colo. Rev. Stat. § 13-21-102(1.5)(a) at a later date and expresses no opinion as to the merits of such a request.

      (d)     Claim 4 **REMAIN as modified**,

      (e)     Claim 5 **REMAIN**,

      (f)     Claim 6 be **DISMISSED**,

      (g)     Claim 7 be **DISMISSED**,

      (h)     Plaintiff's claims accruing prior to December 20, 2016 **REMAIN**, and

      (i)     Plaintiff's request for punitive damages be **STRICKEN**.[9]

DATED: July 3, 2020

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[9] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).